RECEIVED: 07/09/2008 02:47:31 PM

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>SPOKANE RACEWAY PARK, INC.,<br><br>    Debtor.<br>_____<br>JOHN D. MUNDING, in his capacity as<br>Chapter 11 Trustee and on behalf of<br>Spokane Raceway Park, Inc., as Debtor,<br><br>    Plaintiff,<br><br>vs.<br><br>LeMASTER & DANIELS, P.L.L.C.,<br><br>    Defendant.<br>_____<br>LeMASTER & DANIELS, P.L.L.C.,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>WASHINGTON MOTORSPORTS, LTD.,<br><br>    Third-Party Defendant.<br>_____ | Case No. 06-01966-PCW11<br><br><br><br><br><br><br><br>Adv. No. 07-80122-PCW<br><br><br><br><br><br><br><br>MEMORANDUM DECISION RE:<br>WASHINGTON MOTORSPORTS,<br>LTD.'S MOTION TO DISMISS<br>LeMASTER & DANIELS'<br>THIRD-PARTY CLAIM AND/OR<br>FOR THIS COURT TO ABSTAIN<br>FROM HEARING THAT CLAIM<br>AND/OR FOR THIS COURT TO<br>DECLINE JURISDICTION |

PATRICIA C. WILLIAMS, Presiding Judge

    This controversy raises issues of bankruptcy court jurisdiction, specifically "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) and abstention under both statutes.

## BACKGROUND

    Many years ago, Mr. Orville Moe dreamed of a motor vehicle raceway in the West Plains area of Spokane. To accomplish his dream, in 1972 he formed Washington Motorsports, Ltd. (hereinafter

MEMORANDUM DECISION . . . - 1

"WML"), a Washington limited partnership. Mr. Moe is the majority stockholder of Spokane Raceway Park, Inc. (hereinafter "SRP"). SRP was the general partner of WML and had an agreement with WML to manage WML's affairs, including the raceway operations. Limited partnership interests of various types were sold in WML. There were approximately 1,400 limited partnership interests sold to an unknown number of individuals or entities, with SRP owning an undetermined number of limited partnership interests. WML and SRP, either collectively or individually, engaged in business enterprises other than the motor vehicle raceway.

In recent years, controversy has surrounded the operation of the raceway and other business ventures. In 2003, certain limited partners of WML brought suit in Spokane County Superior Court against SRP and WML and requested that WML be placed into receivership. On July 1, 2005, after a lengthy trial, Mr. Barry Davidson was appointed as the Receiver for WML and all rights and responsibilities of SRP regarding the management of WML ceased. Allegations of mismanagement, malfeasance and self-dealing have been made and continue to be made among the Receiver, SRP, Mr. Moe, his various family members and others. It is an understatement to say that the receivership has been contentious. The state court has not yet completely resolved issues as to the identity of the limited partners and their various partnership interests, including any limited partnership interests held by SRP.

The financial affairs of SRP and WML were interwoven. WML's business records were "poorly kept, incomplete, and obscure, if not unintelligible."[1] The state court found that SRP had breached its fiduciary duty to WML.

L&D served as accountants to WML, SRP, Mr. Moe and related businesses for many years. It prepared financial statements and tax returns and, for some period of time, also maintained the list of limited partners. In the receivership action, L&D filed a claim alleging that WML owes it $178,893.94. Only the portion of that claim for $64,644.85 representing attorney fees L&D incurred in responding to the Receiver's requests for information and participating in the trial in state court is relevant to this

---

[1] SRP had no checking account, but used unnumbered checks drawn on the WML checking account to pay both SRP and WML expenses. SRP did not consistently maintain separate books and financial records. Many employees were paid in cash from cash receipts with no accurate records kept of said cash receipts, or even complete names and addresses and "wages earned-to-date" for the employees. Spokane County receivership action, Case No. 03-2-068564, Findings of Fact and Conclusions of Law dated July 1, 2005.

MEMORANDUM DECISION . . . - 2

controversy. That portion of the claim in the receivership is based upon "indemnification as required by letter agreement dated 12/20/03."

The Receiver objected to the claim of L&D on the basis that L&D had divided loyalties; was negligent; engaged in intentional misdoing; and aided and abetted SRP in its breach of fiduciary duty to WML. Further, such conduct damaged WML, which damages should be offset against any amounts owed by L&D. In 2006, the dispute between the Receiver and L&D resulted in the Adjunct Action filed by the Receiver pursuant to RCW 7.60.060 as an action relating to the underlying receivership.

The causes of action in the Adjunct Action against L&D and its employee Mr. Wyatt are similar to the issues raised in the objection to the L&D claim in the receivership. The allegation most relevant to the current controversy is at paragraph 2.9 of the First Amended Complaint which reads:

> L&D and Wyatt contracted to perform services for WML in 2004 which included preparation of WML's 2003 financial statements, in accordance with the terms of an Engagement Letter that was presented for signature to SRP as Managing General Partner of WML. This Engagement Letter purportedly required WML to indemnify L&D from any claims made against it because of wrongdoing by its other clients (SRP and Moe), regardless of whether the wrongdoing was contrary to WML's best interests. L&D did not seek such indemnifications from SRP, U.S. Fast Foods, or Moe and Deonne Moe. L&D and Wyatt did not inform or notify any officer or director of SRP, or any of the limited partners of WML, of the purported indemnity provision before obtaining Moe's signature on the Engagement Letter. L&D and Wyatt took the same action with respect to the following year's Engagement Letter that was presented for Moe's signature in early 2005, while again failing to notify any other officer or director of SRP, or any of the limited partners of WML.

The Adjunct Action seeks damages and a determination that L&D's breach relieved WML of any duty to L&D under the engagement letter of December 20, 2003. It also seeks a declaration that "the purported indemnity, exculpatory and self-protective provisions of the Engagement Letters are against public policy and void and unenforceable."

In the Adjunct Action, defendant Mr. Wyatt, appealed the state court trial judge's denial of a request for "assignment of a different judge." The Washington Supreme Court has now granted discretionary review of the appeal. Counsel indicated that the Supreme Court decision is expected in late 2008 or early 2009. That decision will only determine the identity of the state court judge who will hear the Adjunct Action. Any final resolution of the merits of the Adjunct Action will not occur in the foreseeable future.

After the current controversy arose in this court, the Receiver filed a Motion for Summary

MEMORANDUM DECISION . . . - 3

Judgment in the receivership action regarding his objection to the claim of L&D. That motion seeks a determination that the December 20, 2003 engagement letter is not binding or valid as to WML due to, among other things, the fact Mr. Moe had no authority to sign it and/or did not sign it as a representative of WML. The hearing on the motion has not been scheduled.

On August 17, 2006, SRP commenced a Chapter 11 proceeding and on September 28, 2006, the U.S. Trustee's Motion to Appoint a Chapter 11 Trustee was granted. L&D filed a Proof of Claim in the Chapter 11 for $70,966.57. No supporting documentation was attached nor was the basis of the claim described. On October 1, 2007, the Chapter 11 Trustee filed this adversary proceeding against L&D. The Complaint recounts the relationship between L&D and SRP, WML and Mr. Moe and some of the facts determined by the state court in the receivership action.

The Complaint against L&D seeks to liquidate and determine the validity of the Proof of Claim filed by L&D against the estate. Resolving claim disputes in the context of a Chapter 11 proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B). The bankruptcy court has core jurisdiction with regard to that cause of action. 28 U.S.C. § 1334(b)

The Complaint alleges various causes of action against L&D, similar to the claims alleged by WML in the Adjunct Action and the receivership. The Complaint alleges that L&D's breach of duties gave rise to claims against SRP by WML. L&D filed a Third-Party Complaint naming WML and also alleging various counterclaims against the debtor, such as that SRP negligently or intentionally provided false and misleading information to L&D regarding WML. The counterclaim also seeks equitable indemnity from SRP for any recovery by WML against L&D based on WML's claims for accounting malpractice. These causes of action and counterclaims are state law claims.

L&D's third-party claim against WML arises from WML's alleged failure to indemnify and hold L&D harmless as required by the engagement letters dated December 20, 2003 and January 21, 2005. Both those engagement letters have identical paragraphs regarding indemnity and hold harmless requirements. Those paragraphs are:

> Washington Motorsports, Ltd. hereby indemnifies LeMaster & Daniels PLLC and its members and employees and holds them harmless from all claims, liabilities, losses, and costs arising in circumstances where there has been a known misrepresentation by a member of Washington Motorsports, Ltd.'s management, regardless of whether such person was acting in Washington Motorsports, Ltd.'s interest. This indemnification will survive termination of this letter.

MEMORANDUM DECISION . . . - 4

> In the event we are requested or authorized by Washington Motorsports, Ltd. or are required by government regulation, subpoena, or other legal process to produce our documents or our personnel as witnesses with respect to our engagements for Washington Motorsports, Ltd., Washington Motorsports, Ltd. will, so long as we are not party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such requests.

The first of these paragraphs is the basis of L&D's third-party claim in this adversary against WML for indemnification for any damages to SRP for which L&D may be assessed. The second paragraph which contains the duty to reimburse L&D of any expense it incurs in responding to a third-party proceeding is the basis for L&D's claim for $64,644.85 in the receivership action.

In its Motion to Dismiss, WML asserts that this Court lacks subject matter jurisdiction because the third-party cause of action does not "relate to" the SRP's bankruptcy case for purposes of 28 U.S.C. § 1334(b). Nor does supplemental jurisdiction lie under 28 U.S.C. § 1367(a). L&D argues that this Court has two alternative bases for jurisdiction over these causes of action in the Third-Party Complaint: "related to" jurisdiction and supplemental jurisdiction.

## ISSUES

1. Does the bankruptcy court have "related to" jurisdiction with regard to the Third-Party Complaint?

2. Does the bankruptcy court have supplemental jurisdiction with regard to the Third-Party Complaint?

3. Assuming jurisdiction exists, must or should the bankruptcy court abstain from hearing the third-party claims?

## DISCUSSION

**1.    Does "Related To" Jurisdiction Exist Regarding the Third-Party Claims?**

Jurisdiction for bankruptcy cases is found in the provisions of 28 U.S.C. §1334. 28 U.S.C. § 1334(b) provides that the district courts shall have original but not exclusive jurisdiction over all civil proceedings "arising under" Title 11, or "arising in" or "related to" cases under Title 11. Purely state law claims cannot create "arising under" jurisdiction because they are not based upon a provision of Title 11. In re Pettibone Corp., 135 B.R. 847 (Bankr. N.D. Ill. 1992). Similarly, purely state law claims cannot create "arising in" jurisdiction, as such matters encompass administrative matters that only arise in a

MEMORANDUM DECISION . . . - 5

bankruptcy case. Id. The parties agree that the issue is whether or not L&D's third-party claims "relate to" SRP's bankruptcy.

By its decision in In re Fietz, 852 F.2d 455 (9th Cir. 1988), the Ninth Circuit adopted the "Pacor test" for determining whether a civil proceeding is related to a bankruptcy. Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984). This test applies in the examination of a third-party adversary complaint as well as in the examination of initial adversary complaints. Proceedings "related to" the bankruptcy for purposes of jurisdiction include: 1) causes of action owned by the debtor which become property of the estate; and 2) suits between third-parties which have an effect on the bankruptcy estate. Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902 (9th Cir. 2007). An action is "related to" a bankruptcy case if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, and which in any way impacts upon the handling and administration of the bankruptcy estate. In re Pegasus Gold Corp., 394 F.3d 1189 (9th Cir. 2005). Shared facts between the state law claims in the Third-Party Complaint and the claims and counterclaims between the debtor and L&D are not sufficient to give rise to "related to" jurisdiction. Pacor, Inc. v. Higgins, supra.

In this case, it is unlikely the resolution of L&D's indemnity claim against WML would have any affect on the bankruptcy estate of SRP. Assuming arguendo that L&D is successful and obtains a judgment against WML on its indemnity claim, that judgment would not be enforceable against SRP, it would not attach to the assets of SRP's estate, it would not re-prioritize creditors of SRP's estate, nor would it hinder the administration of SRP's estate. It would not increase the assets of the estate available for distribution as the indemnity claim only determines which of two entities would owe money to the estate.[2] If WML is the successful party, its judgment against L&D would, for the same reasons, play no significant role in the administration of SRP's estate.

Resolution of the dispute between L&D and WML in the Third-Party Complaint would have no impact or, at best, only a very remote and speculative impact upon the debtor or its estate. The necessary relationship between the resolution of state law third-party claims and SRP's reorganization process does

---

[2] L&D argues there could be an effect upon the bankruptcy estate as WML could increase the amount of its creditor's claim against SRP to include any amounts paid pursuant to a duty to indemnify. Whether WML could or would be allowed to do so, is speculative.

MEMORANDUM DECISION . . . - 6

not exist. Consequently, there is no "related to" jurisdiction.

## 2. Does Supplemental Jurisdiction Exist Regarding the Third-Party Claims?

Pursuant to 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over state law claims which are related to the federal claims in an action pending in federal court.

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Although the statute refers to district courts, the Ninth Circuit has concluded that it also authorizes bankruptcy courts to exercise such jurisdiction. In re Pegasus Gold Corp., supra.[3]

In that decision, the Circuit addressed the continuing jurisdiction of a bankruptcy court after confirmation of a Chapter 11 plan. It concluded that "related to" jurisdiction existed as the particular federal and state law claims at issue were intertwined with debtor's confirmed plan and adjudication of the claims was necessary for the implementation of the confirmed plan. Jurisdiction was also based upon § 1367 as there was a "common nucleus of facts" between the federal claims over which the bankruptcy court had "related to" jurisdiction under § 1334 and the state law claims. That common nucleus of facts gave rise to supplemental jurisdiction as the various claims were so intertwined that they formed "one case or controversy."

> Nonetheless, the bankruptcy court could properly exercise supplemental jurisdiction over these claims. Pursuant to 28 U.S.C. § 1367, district courts have 'supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.' This circuit has applied § 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on 'related to' bankruptcy jurisdiction. *See Sec. Farms v. Int'l Bhd. Of Teamsters*, 124 F.3d 999, 1008 n. 5 (9th Cir. 1997). Here, the remaining claims involve a 'common nucleus of operative facts' and would ordinarily be expected to be resolved in one judicial proceeding, and therefore the bankruptcy court has supplemental jurisdiction over the remaining claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (footnote omitted).

In re Pegasus Gold Corp., 394 F.3d at pp. 1194-95. In the Ninth Circuit, there appears to be two bases for a bankruptcy court to exercise jurisdiction regarding state law claims in adversary proceedings:

---

[3]Some circuits have reached contrary conclusions. Matter of Walker, 51 F.3d 562 (5th Cir. 1995).

MEMORANDUM DECISION . . . - 7

1) either "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) which requires an impact on the debtor; or 2) supplemental jurisdiction under 28 U.S.C. § 1367(a) which requires a common nucleus of facts with other federal claims.

> Thus, at present, the bankruptcy court's 'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 'over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.' *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir. 2005); *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 n. 5 (9th Cir. 1997).

In re Sasson, 424 F.3d 864, 869 (9th Cir. 2005).

Even though § 1334(b) and § 1367(a) both contain the term "related to," the term is applied differently in the two statutes. Rather than an analysis of the impact of state law claims on the debtor or its estate, supplemental jurisdiction requires an analysis of the factual underpinning of the state law claim. If the facts from which the state law claim is derived are the same or substantially the same facts from which the bankruptcy law claim arises, supplemental jurisdiction exists. The term "related to" in § 1334 (b) requires a relationship between the state law claim and the administration of the estate, the distribution to creditors, the successful reorganization of the debtor or some other unique bankruptcy consideration. The term "related to" in § 1367 requires a strong factual relationship between the state and federal claims presented. Varying claims may be part of the same case or controversy if they arise out of the same transaction, the same negligent acts or the same factual circumstances. Simply because there are both federal and state claims, two different courts should not be required to hear the same or nearly the same evidence.

State law claims of indemnity against a third-party which arise from the transaction or occurrence giving rise to a federal cause of action against the original parties have been held to be subject to supplemental jurisdiction. Grimes v. Mazda North American Operations, 355 F.3d 566 (6th Cir. 2004); Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002).

As more comprehensively described earlier in this opinion, the controversy between the bankruptcy estate and L&D is factually related to the controversy between L&D and WML in the Adjunct Action. Whether misrepresentations were made by Mr. Moe and others, the substance of such and the identity of the entity upon whose behalf those misrepresentations were made permeate both the Adjunct

MEMORANDUM DECISION . . . - 8

Action and the adversary proceeding. The current controversy is not, however, whether this court has supplemental jurisdiction with regard to the state law claims between L&D and WML in the Adjunct Action, but whether this court has supplemental jurisdiction with regard to the third-party state law claim for indemnity alleged in this adversary. Are the factual circumstances giving rise to the claims in the underlying adversary the same circumstances which give rise to the third-party claim for indemnity?

The ultimate legal and factual issue presented in the third-party cause of action is whether the engagement letters between L&D and WML are valid and enforceable. WML argues that at the time those agreements were executed, L&D knew or should have known that SRP had made misrepresentations regarding WML and breached its duty to WML. Evidence necessary for the determination of the validity and enforceability of the engagement letters will overlap and duplicate the evidence necessary to determine the causes of action and counterclaims in the underlying adversary proceeding. A common nucleus of facts between the federal and state law claims in the underlying adversary and the state law claim for indemnity against the third-party indicate supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a).

### 3. **Should This Court Abstain From Hearing the Third-Party Complaint?**

The third-party defendant WML requests that, assuming jurisdiction exists, this court abstain from considering the Third-Party Complaint. Having determined that no "related to" jurisdiction exists under § 1334(b), the abstention provisions of that statute (c)(1) and (2) are inapplicable. As the court's jurisdiction exists pursuant to § 1367, it is that statute's abstention provisions which control.

The relevant statutory section is 28 U.S.C. § 1367(c) reads:

(c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

MEMORANDUM DECISION . . . - 9

Unlike 28 U.S.C. § 1334(c)(1), under this statute, abstention is not mandatory. Courts exercise their discretion in the application of these statutory provisions. The underlying objective of the statutory provisions is to exercise federal jurisdiction in a manner which is consistent with "economy, convenience, fairness and comity." The statutory factors establish parameters for the exercise of the court's discretion to accomplish these underlying objectives. Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California, 24 F.3d 1545 (9th Cir. 1994). Application of the statutory factors requires a thorough analysis of the specific case and controversy before the court. Bahrampour v. Lampert, 356 F.3d 969 (9th Cir. 2004).

### A.  Novel or Complex Issue of State Law

The Third-Party Complaint seeks a determination that the engagement letters, which contain the contractual terms between L&D and WML, are valid and enforceable and seeks to enforce an indemnity provision of the contracts by requiring WML to indemnify L&D from any recovery SRP may obtain against L&D. The determination of the validity of a contract, including issues regarding the authority of a corporate officer to bind the corporation, are not novel or complex. Nor are issues regarding the interpretation of contractual indemnity provisions.

### B.  State Law Issues Substantially Predominate Over Federal Law Issues

As noted above, there are few federal law issues in the original Complaint and the counterclaims asserted against SRP by L&D. The issue of primary importance in the adversary proceeding is whether SRP owes money to L&D and, if so, how much. Resolution of that controversy will depend upon an analysis of L&D's counterclaims for breach of contract by SRP and whether SRP misrepresented its or WML's financial condition and records and whether SRP promised to pay for services rendered for the benefit of WML.

The state law claims relating to WML's purported duty to indemnify L&D for any recovery obtained by SRP are secondary and only tangential to the resolution of the claims in the underlying adversary.

### C.  Dismissal of Original Jurisdiction Claims

This factor is irrelevant in this case.

MEMORANDUM DECISION . . . - 10

### D. Exceptional Circumstances Provide Compelling Reasons to Decline Jurisdiction

Having determined that the same factual situation gave rise to both the federal and state law claims, a federal court abstains from exercising its jurisdiction if there are exceptional circumstances which give rise to a compelling reason to abstain. For supplemental jurisdiction to exist, there must be common facts and the existence of those common facts cannot alone justify a federal court from abstaining from hearing state law causes of action even though a state court proceeding may be pending. There must be something more than the likelihood of duplicative evidence to justify abstention.

The exceptional circumstance in this situation is the state court receivership which has been vigorously pursued since 2003. The receivership action involving WML is the most significant factor in the underlying reorganization process of SRP. Certain issues to be resolved in the receivership proceeding, such as SRP's status and rights as a limited partner of WML, greatly impact the assets of the Chapter 11 estate. Both the Chapter 11 Trustee and the Receiver are working to determine the claims each of the entities has against the other. Until that process resolves the greater part of the cross-claims between the two entities, the scope of the liabilities of the Chapter 11 estate cannot be determined.

The financial, management and operational affairs of these two corporate entities were intertwined. The receivership process plays a significant role in separating, to the extent possible, those financial affairs. These are indeed exceptional circumstances. It is also important to note that the state court has pending before it the Adjunct Action which involves many of the same allegations regarding misrepresentation and breach of duty by L&D that are raised by WML as reasons for the invalidity of the engagement letters in this third-party claim. In resolving the Adjunct Action as well as WML's objection to the claim of L&D filed in the receivership, the state court must necessarily hear and consider much of the evidence relevant to the issues arising from the indemnity provision in the engagement letters. It is advisable that the state court which is determining issues intertwined with the claim for indemnity in the Third-Party Complaint also determine the issue of indemnity.

This Court's retention of the state law claim for indemnity by L&D against WML while allowing the state court in the Adjunct Action and receivership to determine the plethora of other rights and responsibilities between L&D and WML would

MEMORANDUM DECISION . . . - 11

> result in duplicative litigation, wasted judicial resources, needless expenditures for both parties, conflicting case schedules, a potential race to judgment, and/or the possibility of inconsistent verdicts. General principles of comity and fairness support the remand of the state claims so that they can be heard together with the pending state court action.

West Coast, Inc. v. Snohomish County, 33 F.Supp.2d 924, 926 (1999).

As to the specifics of the adversary proceeding, the focus is the relationship between SRP and L&D. The evidence necessary to determine the claims and counterclaims in the adversary proceeding is much broader than the evidence necessary to determine L&D's allegations that WML has a contractual duty to indemnify L&D. Although it is likely there will be some duplication of evidence in the trial of this adversary and the trial of the Adjunct Action by the state court, that limited duplication arises not from the fact that there are both federal and state causes of actions, but from the common nucleus of facts required for supplemental jurisdiction to exist.

The third-party cause of action for indemnity focuses not on the relationship between SRP and L&D, but upon the relationship between WML and L&D. Clearly, the affairs of the two corporations were intermingled and confused, but one of the functions of the receivership is to evaluate the evidence and determine the legal rights and responsibilities of WML. The focus of the Adjunct Action as well as the causes of action against WML in the Third-Party Complaint is to evaluate the evidence and determine the legal rights and responsibilities between L&D and WML. The function of the adversary is to evaluate the evidence and determine the legal rights and responsibilities between L&D and SRP.

During the pendency of the receivership and the Chapter 11 proceeding, various issues have arisen that, due to the confusion existing in the financial affairs of the two corporate entities, have affected both the receivership and the Chapter 11. Historically, the state court has reviewed and decided such issues with respect to WML, and this court has reviewed and decided such issues with respect to SRP. An important consideration in this controversy is that, not only is there a pending state court action, but that both the Adjunct Action and the causes of action against WML in the Third-Party Complaint present the same ultimate legal and factual determination, i.e., the validity of the engagement letters. That is a determination better made by the state court.

MEMORANDUM DECISION . . . - 12

# CONCLUSION

Resolution of the state law claims in the Third-Party Complaint by L&D against WML would have no effect on the bankruptcy estate or the administration of the Chapter 11 proceeding of SRP. No "related to" jurisdiction exists pursuant to 28 U.S.C. § 1334(b). This Court does have supplemental juridsiction with regard to the Third-Party Complaint against WML as the issues between L&D and WML arise from the same nucleus of facts as the issues between SRP and L&D in the adversary proceeding. 28 U.S.C. § 1367(a).

This Court should abstain from determining the issues raised by L&D against WML in the Third-Party Complaint as, under these exceptional circumstances, compelling reasons exist for abstention. There is a pending state court action between L&D and WML which requires the state court to determine the same ultimate question of law and fact, i.e., the validity and enforceability of the contracts which contains the indemnity provisions at issue in the Third-Party Complaint. Historically, the state court has and will continue to determine the rights and responsibilities of WML in the pending receivership action, including rights and responsibilities as to L&D. The Chapter 11 proceeding of SRP as well as this adversary will determine the rights and responsibilities of SRP as they relate to L&D. The efficient use of judicial resources as well as those of the parties require this court to abstain. Even though some duplication of evidence may occur in the presentation before the two courts, that is the result of the intertwined operation and management of SRP and WML. It is in the interests of comity for the state court to continue to resolve disputes between L& D and WML.



07/09/2008 02:37:14 PM

Patricia C. Williams
Bankruptcy Judge

MEMORANDUM DECISION . . . - 13